Steven W. **BIESTER**, Plaintiff–Appellant,

v.

**MIDWEST HEALTH SERVICES, INC.**, James A. Klausman, Floyd C. Eaton, Jr., Deidre G. Klausman, and Virginia I. Eaton, Defendant–Appellees.

No. 94–3345.

United States Court of Appeals, Tenth Circuit.

Feb. 26, 1996.

---

Dale L. Ingram of Jolley, Walsh & Hager, P.C. Kansas City, Missouri, for Plaintiff–Appellant.

Ryan E. Karaim of Franke & Schultz, P.C. Kansas City, Missouri, for Defendant–Appellees.

Before EBEL and LOGAN, Circuit Judges, and HOLMES, District Judge.*

HOLMES, District Judge.

Steven W. Biester appeals from the district court's grant of summary judgment to Midwest Health Services, Inc. ("Midwest"), his former employer. In the underlying lawsuit, Mr. Biester alleges that he was sexually harassed by his supervisor at Midwest. He brings this claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

Midwest moved to dismiss Mr. Biester's lawsuit for failure to bring suit within 90 days after he received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). Title VII imposes this 90–day time limitation upon prospective plaintiffs. 42 U.S.C. § 2000e–5(f)(1). In its motion, Midwest asserts that Mr. Biester received the right to sue notice on October 22, 1993, but that he did not file his lawsuit until January 26, 1994, five days after the expiration of the 90–day period prescribed by Title VII. Mr. Biester responds that his mental incapacity tolled the statute of limitations for a sufficient number of days such that the actual commencement of the lawsuit was timely.

Initially, the district court treated Midwest's motion as a motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Then, because the parties submitted materials outside of the pleadings, the district court properly converted the motion into a motion for summary judgment under Fed.R.Civ.P. 56. Accordingly, the district court allowed the parties reasonable opportunity to present additional pertinent material.

Ultimately, the district court granted summary judgment to Midwest, holding that no basis upon which to toll the 90–day limitations period existed in this case. First, Mr. Biester argues to this Court that the district court erred when it refused to toll the limitations period. Second, he argues that the district court applied the wrong standard to Midwest's summary judgment motion and improperly drew adverse inferences from the evidence.

We affirm.

### I.

Summary judgment is appropriate where "there is no genuine issue as to any material fact," *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Insurance Corp.,* 805 F.2d 342, 345 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987), and "the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). In *Celotex,* the Supreme Court stated:

[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. at 2552.

A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts, Fed.R.Civ.P. 56(e), sufficient to raise a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

■ Summary judgment is only appropriate if "there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511. The Supreme Court stated:

[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512. Thus, to defeat a summary judgment motion, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)).

In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Boren v. Southwestern*

*Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

■ This Court reviews the summary judgment determination of a district court *de novo*. *Housing Authority v. United States*, 980 F.2d 624, 628 (10th Cir.1992).

## II.

Midwest employed Mr. Biester at its Fairlawn Heights facility from approximately December 24, 1992 through May 17, 1993. Mr. Biester alleges that his female supervisor sexually harassed him from January 1993 until March 30, 1993. Mr. Biester subsequently filed a complaint with the Kansas Commission on Human Rights. That agency forwarded the complaint to the EEOC for dual filing.

On three different occasions throughout April and May 1993, Mr. Biester was hospitalized at a psychiatric care facility with a principal diagnosis of major depression. He received outpatient treatment until late May 1993. On or about June 1, 1993, Mr. Biester moved into the residence of his former spouse, Susan V. Biester. By affidavit, Ms. Biester states that Mr. Biester "had absolutely no concept of time, date, or day" during this period. Ms. Biester also testified about a setback suffered by Mr. Biester when he was not selected for a job, allegedly because of his lawsuit against his former employer. Ms. Biester believes that her former husband's "pattern of behavior" continued until approximately mid-December. Dr. William A. O'Connor, Mr. Biester's psychiatric expert, opined that "Mr. Biester continued to suffer depression through the winter of 1993 with classic symptomology of time disorientation, fatigue, memory loss, and impaired judgment to time, future events and consequences."

On September 21, 1993, Mr. Biester requested a right to sue notice from the EEOC. Mr. Biester's attorney sent a letter to the EEOC on September 29, 1993, asking that the notice be sent directly to him. On October 12, 1993, the EEOC mailed a right to sue notice to Mr. Biester, via certified mail. The EEOC failed to send a notice to Mr. Biester's attorney.

Mr. Biester recalls receiving two or three notices informing him that he had a certified letter at the post office. He further recalls picking up the letter, but he does not remember the date. He also recalls delivering the letter to his attorney by hand on some unknown date. Mr. Biester's attorney, Dale L. Ingram, submitted an affidavit in which he stated that Mr. Biester told him "explicitly or implicitly" that Mr. Biester received the notice on October 30, 1993. However, Postal Service records reflect that the notice was retrieved by Mr. Biester on October 22, 1993. The notice informed him that he had 90 days to bring any desired civil action. Mr. Biester filed his complaint in the instant lawsuit on January 26, 1994, which is within the 90–day period if he received the notice on October 30, 1993, but outside the time limit if the notice was received on October 22, 1993.

### III.

The facts material to the resolution of Mr. Biester's appeal are not in dispute. Midwest has presented competent evidence that Mr. Biester received the EEOC notice on October 22, 1993. Although Mr. Biester previously told his attorney that he received the notice on October 30, 1993, no evidence substantiating Mr. Biester's previous statement has been submitted. Further, Mr. Biester now states that he does not know when he received the notice. Finally, Midwest does not dispute the fact that Mr. Biester was diagnosed with major depression and experienced the attendant symptoms through December 1993. Therefore, the Court accepts these facts as true. No genuine issues of material fact remain to be determined before summary judgment can be entered.

■ The first legal issue for the Court is whether, under the circumstances presented by this case, Mr. Biester's mental illness tolled the applicable statute of limitations such that he commenced his lawsuit in a timely manner.

The Title VII provision at issue states that "a civil action may be brought against the respondent named in the charge" within 90 days after the issuance of a right to sue notice. 42 U.S.C. § 2000e–5(f)(1). The 90–day period for filing suit generally com-

mences on the date that the complainant actually receives the EEOC right to sue notice. *Williams v. Southern Union Gas. Co.*, 529 F.2d 483, 487 (10th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 (1976).

■ It is well settled that the 90–day period for filing a civil lawsuit after final disposition of a complaint by the EEOC is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 859 (10th Cir.1983). Thus, the requirement is not jurisdictional but is in the nature of a statute of limitations. *Zipes*, 455 U.S. at 393, 102 S.Ct. at 1132.

Courts have narrowly construed equitable exceptions to the time limitations set out in Title VII. *See, e.g., Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."); *Earnhardt v. Puerto Rico*, 691 F.2d 69, 71 (1st Cir.1982). In this case, the court below properly acknowledged that:

> [t]he Tenth Circuit has generally recognized equitable tolling of Title VII time limitations only if the circumstances of the case "rise to the level of active deception which might invoke the powers of equity to toll the limitations period." *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838–39 (10th Cir.1979). "For instance, equitable tolling may be appropriate where a plaintiff has been 'lulled into inaction by her past employer, state or federal agencies, or the courts.'" *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir.1984) (quoting *Carlile v. South Routt School Dist. RE 3–J*, 652 F.2d 981, 986 (10th Cir.1981)). "Likewise, if a plaintiff is 'actively misled,' or 'has in some extraordinary way been prevented from asserting his or her rights,' we will permit tolling of the limitations period." *Martinez*, 738 F.2d at 1110

(quoting *Wilkerson v. Siegfried Ins. Agency, Inc.*, 683 F.2d 344, 348 (10th Cir.1982)).

Mr. Biester argues that the district court erred when it determined that his mental condition did not prevent the timely filing of his lawsuit. While we have held that the limitations period may be tolled where a claimant has been "actively misled," *see, e.g., Richardson v. Frank*, 975 F.2d 1433, 1435–37 (10th Cir.1991), the Tenth Circuit has never held that mental incapacity tolls the statute of limitations.[1] We believe that, under the facts presented by this case, it is unnecessary to reach that issue.

The few courts which have recognized an exception for mental incapacity have limited the application of this equitable doctrine to exceptional circumstances. *See, e.g., Lopez v. Citibank, N.A.*, 808 F.2d 905, 906–07 (1st Cir.1987) (where the plaintiff was able to pursue his claim despite illness, equitable tolling was not warranted); *Moody v. Bayliner Marine Corp.*, 664 F.Supp. 232, 236 (E.D.N.C.1987) (panic disorder suffered by plaintiff did not constitute "exceptional circumstances" such that she was prevented from pursuing her claim). In *Bassett v. Sterling Drug, Inc.*, 578 F.Supp. 1244, 1248 (S.D.Ohio 1984), the court stated that equitable tolling for mental incapacity should be limited to "the objective standard of adjudication or institutionalization ... [to] protect[ ] defendants against specious allegations of mental incompetence advanced in desperate efforts to save time-barred claims." Further, some courts which do recognize mental illness as a reason for equitable tolling have refused to toll the statute of limitations when the plaintiff is represented by counsel during the 90-day limitations period. *Lopez*, 808 F.2d at 907; *Moody*, 664 F.Supp. at 236.

Under the circumstances presented by this case, we decline to toll the statute applicable to Mr. Biester's case based upon his claim of mental illness. First, Mr. Biester has not alleged the "exceptional circumstances" required by most courts to toll the statute. For example, there is no claim here that Mr. Biester was adjudged incompetent or institutionalized. Second, we agree with the district court that the evidence demonstrates that, in spite of his mental condition, Mr. Biester "was capable of pursuing his own claim." He wrote to the EEOC on September 21, 1993 to request a right to sue notice. Subsequently, Mr. Biester told his attorney he had received the notice and delivered the notice to his attorney's office. Thus, his mental condition simply does not rise to the level of the mental incapacity contemplated by the courts that have tolled the 90-day limitations period as a result of such incapacity.

Third, Mr. Biester was represented by counsel throughout the entire 90-day period. It is undisputed that his lawyer had adequate time to file his action against Midwest. We agree with the district court that:

> [c]ounsel knew well in advance of the 90-day time limit that plaintiff had received the right to sue notice. Despite the fact that the notice was dated October 12, 1993, counsel chose to merely rely on plaintiff's representation that the notice was received on October 30, 1993, and then chose to wait until the 88th day of the presumed filing period before filing the complaint in this court. Under these circumstances it can hardly be said that plaintiff's mental condition prevented the timely filing of this suit.

Even if, during some days of this crucial time period, Mr. Biester was not able to appreciate the significance of the date he received the right to sue notice, the evidence shows that he was not so incapacitated that he was unable to pursue his lawsuit. Further, because he notified his lawyer within 90 days of October 22, 1993, the true date on which he signed for the letter, his mental condition did not in fact prevent the timely filing of his lawsuit. Under the circum-

---

1. However, other courts have recognized this possibility. *Cf. Nunnally v. MacCausland*, 996 F.2d 1, 4–5 (1st Cir.1993) (mental illness is an appropriate basis for tolling 30–day filing period set forth in Civil Service Reform Act); *Moody v. Bayliner Marine Corp.*, 664 F.Supp. 232, 235 (E.D.N.C.1987) (recognizing that mental inca-

pacity may toll Title VII limitations period "in rare circumstances"); *Bassett v. Sterling Drug, Inc.*, 578 F.Supp. 1244, 1247–48 (S.D.Ohio 1984) (recognizing exception to ADEA limitations period if plaintiff adjudged mentally incompetent or institutionalized during filing period).

stances presented by this case, equitable tolling of the 90–day period is not appropriate.[2]

### IV.

Appellant also argues that the district court applied the wrong standard of review to Midwest's summary judgment motion and improperly drew inferences adverse to Mr. Biester from the evidence.

First, the district court applied the proper standard when it granted Midwest's motion for summary judgment. Midwest met its burden of demonstrating that the undisputed facts prove that Mr. Biester's complaint was untimely. Indeed, Mr. Biester concedes this point. The court properly held that, to avoid summary judgment, Mr. Biester had the burden of establishing a genuine issue of material fact as to whether the 90–day time period should be tolled. *See Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir.1980). Applying the legal standard for equitable tolling in this Circuit, Mr. Biester has failed to establish a fact question that would prevent summary judgment.

Second, the district court did not draw improper inferences from the evidence. Mr. Biester argues that the district court erred when it used the letter he sent to the EEOC on September 21, 1994 as evidence that he was capable of pursuing his own claim. Mr. Biester claims that the text of the letter shows that he was confused and unable to understand what was required to commence his lawsuit. The letter states that "I am writing in reference to a suit *I have filed* against Fairlawn Hts. nursing center." (emphasis added). However, the fact that Mr. Biester may have thought that, through the filing of his complaint with the EEOC, he had already filed his lawsuit, does not demonstrate that he was mentally incapacitated. This could easily be a layperson's reasonable mistake. *See, e.g., Richardson*, 975 F.2d at

1436 ("EEO complaints are often, as in this case, presented initially by persons without the benefit of counsel or the information to be technically knowledgeable.").

Mr. Biester argues further that the trauma he experienced when he failed to get the position he applied for reduces the evidentiary value of his letter. However, the district court also based its finding that Mr. Biester was capable of pursuing his claim on the fact that he told his attorney that he had received the right to sue letter. This act indicates that, after the traumatic event, Mr. Biester had sufficient capacity to act in furtherance of his lawsuit. Therefore, the district court did not draw unwarranted inferences from Mr. Biester's evidence.

### V.

In conclusion, this lawsuit, filed more than 90 days after Mr. Biester received his right to sue notice from the EEOC, was not timely. In responding to Midwest's motion for summary judgment, Mr. Biester did not present sufficient evidence to merit the equitable tolling of the 90–day limitations period. Further, the district court applied the proper summary judgment standard and did not draw improper inferences from the evidence. For those reasons, we affirm the order and judgment of the district court.

---

**2.** Mr. Biester also claims that he has been prevented from asserting his rights "in some extraordinary way" and that this prevention justifies tolling. To that end, Mr. Biester argues that Midwest caused his mental illness and that the EEOC violated its own regulations by failing to

send a copy of the right to sue letter to Mr. Biester's attorney. However, we conclude that these facts do not constitute the "extraordinary" circumstances necessary to justify equitable tolling under established Tenth Circuit precedent.